

FILED
CLERK, U.S. DISTRICT COURT

SEP 3 0 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

ENTER ON ICMS

OCT 1 2003

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JAMES RYAN and LAURIE ANN RYAN, )<br><br>Plaintiffs, )<br><br>v. )<br><br>MTV NETWORKS, INC., a Delaware corporation, et al., )<br><br>Defendants. ) | No. CV 02-4308-TJH (PLAx)<br><br>**ORDER RE: PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF PETER MORTON** |

Having reviewed and considered all the briefing with respect to the Motion to Compel the deposition of Peter Morton filed by plaintiffs in this action, and the oral argument presented to the Court on September 30, 2003, the Court concludes as follows:

## A.    INTRODUCTION

In this action for, among other things, violation of federal wire and electronic communications law, plaintiffs James Ryan and Laurie Ann Ryan ("plaintiffs") have sued MTV Networks, Inc., Hard Rock Hotel, Inc., and others as a result of plaintiffs' unwitting involvement in a hidden camera "reality" sketch that was to be filmed at the Hard Rock Hotel (the "hotel") in Las Vegas on January 25, 2002. The sketch, which involved an actor portraying an apparently dead body covered in fake blood lying on the bathroom floor in plaintiffs' hotel room, did not go

53

1  as planned.  Plaintiffs allege severe emotional distress and psychological and physical damage

2  as result of the incident.

3       In this motion, plaintiffs seek to take the deposition of Peter Morton ("Morton"), the

4  chairman and CEO of defendant Hard Rock Hotel, Inc. ("Hard Rock").  Defendants object on two

5  grounds: 1. plaintiffs have already exceeded the ten deposition limit set by Federal Rule of Civil

6  Procedure 30(a)(2)(A), and 2. plaintiffs have not established that Morton has unique knowledge

7  relevant to this action, or that they have exhausted other methods of discovery short of deposing

8  Morton.

9

10  **B.    <u>PLAINTIFFS ARE ENTITLED TO TAKE MORTON'S DEPOSITION</u>**

11       In light of the liberal discovery principles of the Federal Rules, defendants are "required to

12  carry a heavy burden of showing why discovery" should be denied.  <u>Blankenship v. Hearst</u>

13  <u>Corporation</u>, 519 F.2d. 418, 429 (9th Cir. 1975).  As the <u>Blankenship</u> court made clear, the mere

14  fact that the individual sought to be deposed is a chief executive of a company is not sufficient to

15  shield that individual from the discovery process, where that person "may have . . . knowledge . . . that

16  others did not" possess.  <u>Id.</u> at 428-29.  While courts, because of the potential for abuse by

17  plaintiffs, are "sometimes willing to protect high-level corporate officers from depositions when the

18  officer has no first-hand knowledge of the facts of the case or where the officer's testimony would

19  be repetitive," such depositions should be allowed where the officer "has first-hand knowledge of

20  important, relevant, and material facts in the case."  <u>First United Methodist Church of San Jose</u>

21  <u>v. Atlantic Mutual Insurance Co.</u>, 1995 WL 566026, at *2 (N.D. Cal. Sept. 19, 1995) (citing <u>Salter</u>

22  <u>v. Upjohn Co.</u>, 593 F.2d 649 (5th Cir. 1979); <u>Blankenship</u>, 519 F.2d at 429; <u>Anderson v. Air West,</u>

23  <u>Inc.</u>, 542 F.2d 1090, 1093 (9th Cir. 1976)).  In <u>First United Methodist</u>, the court granted plaintiff

24  the opportunity to depose the president of defendant Atlantic Mutual, where the president had

25  first-hand knowledge relevant to the case in that he approved the insurance plan under which

26  plaintiff was insured.  In those circumstances, it was concluded that the corporate official "should

27  not be permitted to shield himself from a deposition behind the veil of his presidency."  <u>First United</u>

28  <u>Methodist</u> at *3.  See also <u>Kuwait Airways Corporation v. American Security Bank</u>, 1987 WL

1  11994, at *4 (D.D.C. May 26, 1997) ("high ranking corporate executives are not automatically

2  given special treatment which excuses them from being deposed.")

3  　　　Here, Morton did not just have ultimate authority over the hotel where the incident occurred.

4  Rather, he is a percipient witness to the approval given to MTV to film at the hotel. It is undisputed

5  that Schad Brannon, the marketing director for Hard Rock, spoke with MTV about the MTV.

6  project, and then presented Morton with the idea. (Joint Stip. at 8; Ex. E at 58-59). Morton

7  responded favorably to the idea of the hotel being used for the filming. Id. He ultimately approved

8  the filming at the hotel, approved an e-mail that outlined some of the sketches to be filmed (Joint

9  Stip., Exhibit M), and may have been informed in general terms of the scene in which plaintiffs

10  were involved prior to the filming. (Joint Stip., Ex. N). It also appears that no executives at Hard

11  Rock other than Morton and Brannon had any involvement in the decision to allow MTV to film

12  at the hotel. Christine Belcastro, vice president of hotel operations, denied any knowledge of the

13  approval for filming (Joint Stip. at 10); Don Marrandino, president, did not begin working at the

14  hotel until after the events giving rise to this litigation (Joint Stip. at 10-11); Yale Rowe, vice

15  president of casino marketing, apparently became involved in the matter after the filming at the

16  hotel (Joint Stip. at 11); there is no indication that Alan Detiberiis, hotel director, was involved in

17  the decision to allow the filming at the hotel (Joint Stip at 12); neither is there evidence that Brian

18  Ogaz, Los Angeles CFO, was involved in the decision. (Joint Stip. at 13). While Brannon may

19  have been the individual who received the request from MTV about filming, communicated with

20  MTV about the use of the hotel, and coordinated the logistics, the evidence indicates that Morton

21  granted the ultimate approval. Indeed, defendants seem to concede that Morton was informed

22  of the content of the proposed sketch prior to the filming ("prior to the walk-through, Mr. Brannon

23  did not even tell Mr. Morton about any of the comedy sketches that MTV intended to film at the

24  Hard Rock Hotel." (emphasis added)). (Joint Stip. at 19.)

25  　　　The cases cited by defendants do not assist them in their argument. In Mulvey v. Chrysler

26  Corp., 106 F.R.D. 364, 366 (D.R.I. 1985), plaintiffs sought to depose Lee Iacocca, the chairman

27  of defendant Chrysler Corporation, based on generalized statements he made in a book

28  concerning Chrysler's former practices. Iacocca signed an affidavit professing ignorance of the

1   information being sought by plaintiffs. The court determined that plaintiffs had to first proceed with

2   discovery by interrogatories to Iacocca, without prejudice to seeking an oral deposition if the

3   interrogatory responses so warranted.

4        In <u>Baine v. General Motors</u>, 141 F.R.D. 332 (M.D. Ala. 1991), plaintiff was not permitted

5   to depose the vice president of the company where it was not shown that the information could,

6   not be obtained from others at the company, or that a corporate deposition could not satisfy

7   plaintiff's needs. Neither was it shown that the vice president had superior, unique personal

8   knowledge of the restraint systems at issue, or of the accident that gave rise to the litigation.

9        Here, on the other hand, plaintiffs have shown specific information that Morton was

10   involved in the decision to allow MTV to film at the hotel, and that he in fact was the sole individual

11   who approved the filming. This is the precise information that plaintiffs argue is relevant to this

12   action. Morton has not professed ignorance of his approval, nor does it appear that he could.

13   Further, plaintiffs have shown that the information being sought is not available from others at the

14   company. Finally, interrogatories or requests for admissions are not needed as a starting point

15   to determine if Morton even possesses information relevant to his particular action. Previous

16   discovery has shown that he does.

17        There is nothing in the record that indicates that plaintiffs' purpose in seeking to depose

18   Morton is a desire to waste the time of Morton for no good reason. On the contrary, plaintiffs have

19   listed adequate reasons why they believe his testimony may shed light on the controversy at hand.

20   Defendants have offered nothing to support their claim that Morton should not be deposed other

21   than their assertion that he is a high ranking corporate executive. The evidence presented to the

22   Court shows that he is indeed a high ranking corporate executive, but one who approved the

23   filming of a segment at his hotel that led to the instant litigation. In these circumstances, the

24   taking of his deposition, as opposed to proceeding with other forms of discovery, is appropriate.

25

26   **C.**    <u>**TEN DEPOSITION LIMIT**</u>

27        Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A), a party must obtain leave of Court,

28   "which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)," if "a

1  proposed deposition would result in more than ten depositions being taken under this rule . . ."

2  Plaintiffs have already taken 11 depositions in this matter. An examination of the principles set

3  forth in Rule 26(b)(2), however, leads the Court to conclude that leave of Court should be granted

4  in this matter to take the additional deposition. As set forth by plaintiffs, the discovery sought is

5  not unreasonably cumulative or duplicative, and is not obtainable from some other source that is

6  more convenient; plaintiffs have not had an ample opportunity through discovery to obtain the

7  information sought; and the burden or expense does not outweigh its likely benefit. To date,

8  plaintiffs have deposed only three Hard Rock officials in this matter (Joint Stip. at 15). The

9  information that has been provided so far points to Morton as being the individual who approved

10  the decision to allow the filming of the sketch at the hotel. (Joint Stip., Ex. M). Other individuals

11  deposed have denied having key information concerning the approval surrounding the filming.

12  Plaintiffs, through their first set of interrogatories on Hard Rock, asked Hard Rock to identify all

13  persons who were involved in the decision to allow MTV to film at the hotel. Hard Rock did not

14  identify Morton as such an individual, and it was not until later that plaintiffs obtained information

15  that pointed to Morton. (Joint Stip. at 14-15). Had Hard Rock identified Morton at the appropriate

16  time, plaintiffs may have used one of their ten depositions to depose this individual. Finally, Hard

17  Rock has not identified any unique burden that would be suffered should Morton's deposition be

18  required. The benefit of the discovery appears to outweigh any burden or expense to Hard Rock.

19  Under these circumstances, the Court **grants** leave to take this twelfth deposition.

20

21  **D.    CONCLUSION**

22  GOOD CAUSE HAVING BEEN SHOWN, defendant Hard Rock Hotel, Inc., is hereby

23  **ordered** to produce Peter Morton for the taking of his deposition at a time and place mutually

24  convenient to the parties, but in no event later than October 15, 2003.

25

26

27  DATED: September 30, 2003

                              PAUL L. ABRAMS
                              UNITED STATES MAGISTRATE JUDGE

28